**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RONDELL WHITE, ZANOVIA WHITE and CORNELIUS FLOYD, | : | Civil Action No. 10-2252 (FSH) |
|  | : |  |
| Plaintiffs, | : | **OPINION & ORDER** |
|  | : |  |
| v. | : | Date: May 18, 2011 |
|  | : |  |
| STEVEN I. KOLINSKY, STEPHEN E. HILL, KOLINSKY HILL FINANCIAL GROUP, INC., EDWARD KOENIG, DAVID KOENIG, JEFFREY KOENIG, RIVER STREET PROJECT, LLC, K&K 320 RIVER STREET PROJECT, LLC, PARTNERS INVESTMENT PROPERTIES, LCC, KEVIN SCHMIDT, HACKENSACK PARK PLAZA, LCC and NFP SECURITIES, | : | |
|  | : |  |
| Defendants. | : |  |

**HOCHBERG, District Judge**:

This matter comes before the Court on several Defendants' Motions to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Court has reviewed the parties' submissions pursuant to Federal Rule of Civil Procedure 78.

### BACKGROUND[2]

---

[1] Two Motions to Dismiss are currently before this Court. Defendants Hackensack Park Plaza, LLC; K&K 320 River Street Project, LLC; Steven I. Kolinsky; Kolinsky Hill Financial Group, Inc.; and River Street Project, LLC (the "Hackensack Defendants") jointly filed a Motion to Dismiss on July 13, 2010. (Dkt. No. 18). Defendants David Koenig, Edward Koenig and Jeffrey Koenig (the "Koenig Defendants") jointly filed a Motion to Dismiss on August 26, 2010. (Dkt. No. 47)

[2] The facts set forth here are drawn from the Complaint and from Plaintiffs' January 14, 2011 submission setting forth new allegations they would include in a proposed Amended Complaint. At the motion to dismiss stage, this Court accepts these facts as true. See In re

This action is brought by Rondell and Zonovia White and Cornelius Floyd.  Both Rondell White and Cornelius Floyd are professional baseball players.

I.       THE PURCHASE OF THE HACKENSACK PROPERTY

On October 17, 2005, Defendant Partners Investment Properties, LLC[3] ("PIP") entered into an agreement to purchase a seven acre parcel of property along the Hackensack River in Hackensack, New Jersey (the "Hackensack Property"), planning to develop the property for residential use.

In February of 2007, PIP entered into a joint venture with Defendant K&K 320 River Street, LLC – owned by individual Defendants David Koenig, Edward Koenig and Jeffrey Koenig – to form Defendant River Street Project LLC.  The Koenig Defendants and Defendant Kevin Schmidt[4] are the managing members of the River Street Project.  The River Street Project is housed within the offices of Defendant Kolinsky Hill Financial Group.  The principals of Kolinsky Hill are Defendants Steven Kolinsky and Stephen Hill,[5] both registered securities brokers.[6]

_____

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

[3]  Partners Investment Properties was served on May 17, 2010 but has not yet appeared in this action.  (Dkt. No. 8)

[4]   Schmidt was served on May 17, 2010 but has not yet appeared in this action.  (Dkt. No. 86)

[5]  On January 24, 2011, this Court stayed the instant action as against Stephen Hill in light of his filing of a voluntary petition for bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code.  (Dkt. No. 81)

[6]  Kolinsky and Hill are registered under the auspices of NFP Securities, Inc., a broker dealer.  Though named as a Defendant in the Complaint, NFP was dismissed from the instant action pursuant to a Stipulation of Dismissal entered on August 31, 2010.  (Dkt. No. 49)

On February 28, 2007, the purchase agreement for the Hackensack Property was assigned to the River Street Project.

Plaintiffs allege "upon information and belief," that the River Street Project "and/or one or more of the Defendants" incurred $750,000 in site planning and development costs and in expenditures related to effectuating the purchase agreement.[7]  Plaintiffs further claim that before any documents were drafted in order to raise additional capital for the development of the Hackensack Property, Defendants had incurred $2,500,000 in costs and fees.

On August 1, 2007, the River Street Project filed an application with the City of Hackensack Planning Board to permit a variance that would allow for construction of low-rise apartment buildings on the Hackensack Property.  The Planning Board met on September 10, 2007 but deferred decision on the application to permit the River Street Project to cure various deficiencies.  Plaintiffs allege that the Planning Board considered the application on three occasions following that meeting and each time found that the deficiencies had not been cured.[8]

II.    THE SECURITIES OFFERING

Plaintiffs allege that Defendants – concerned that they would not secure financing or the requisite Planning Board approvals to develop the proposed apartment buildings on the

---

[7] (Cmplt. ¶ 34)

[8] Plaintiffs' January 14, 2011 submission indicates that in an Amended Complaint, Plaintiffs would further allege that when the Planning Board finally granted the permit on December 12, 2007, it conditioned the grant on Defendants securing "Traffic Light Consent" from Bergen County.  Plaintiffs allege that Defendants never secured this consent from the County.  Indeed, Plaintiffs allege that Defendants knew from February 27, 2007 forward that in order to obtain "Traffic Light Consent," they would have to fund certain traffic studies, an effort which they could not or would not make.

Hackensack Property – "entered upon a plan, scheme, arrangement and agreement, to raise additional capital from one or more third parties, including Plaintiffs" in order to finance the full purchase and ultimate development of the property.[9]  Plaintiffs claim that the Defendants planned to solicit investments from clients of Kolinsky Hill who "were not sophisticated and knowledgeable investors" and who relied on Kolinsky Hill for financial advice.[10]

In mid-October 2007, the Hackensack Park Plaza LLC was formed in order to raise capital in a private securities offering (the "Offering").  Hackensack Park Plaza offered Plaintiffs the right to purchase up to $5,000,000 of Class B Non-Voting Limited Liability Company Units. In conjunction with this sale, Plaintiffs allege that Defendants prepared a "Private Offering Memorandum"[11] (the "POM").

III.   FALSE STATEMENTS AND OMISSIONS

Plaintiffs allege that Hill individually and Kolinsky Hill as an entity urged them to purchase shares in the offering, despite Hill's knowledge that they were unsophisticated investors seeking stable, long term investment strategies.  Plaintiffs plead that in order to entice them to invest, Defendants "made intentionally incorrect and misleading statements and omissions with respect to the Offering...."[12]

A.   The Whites' Investment

---

[9]  (Cmplt. ¶ 48)

[10]  (Cmplt. ¶¶ 54-55)

[11]  This document is also referred to throughout the parties' papers as the "Confidential Private Placement Memorandum."

[12]  (Cmplt. ¶ 64)

The Complaint alleges that in a November 2007 telephone call, Hill assured Rondell White that the "deal was virtually certain to result in the full return and repayment of his money, plus very substantial profits."[13]

In a later meeting with White, Hill allegedly described the deal as a "slam dunk" and told the Whites that investing in the Offering was consistent with their risk averse investment approach.[14]  He also reiterated his guarantee that the Whites would get their full investment back, in addition to a substantial return.  Hill further indicated that he and his partners were purchasing the Hackensack Property for substantially less than the amount for which it had been appraised and that the investment involved "no risk" because he and his partners had a firm contract with a buyer and would "flip" the Hackensack Property almost immediately after closing.

The Whites also claim that Hill presented them with a largely blank Subscription Agreement and told them he would fill in the details later.  The Whites allege that Hill failed to indicate in the Agreement that they were being advised by an Investment Representative in order to distance himself from any liability.

Nevertheless, on November 15, 2007, the Whites executed a Subscription Agreement to purchase $1,000,000 of Class B Non-Voting Limited Liability Company Units.

B.     Floyd's Investment

The Complaint alleges that Hill first consulted Floyd about a potential investment in the Hackensack Property in June 2006.  At that time, he told Floyd the deal was a "slam dunk"

---

[13]   (Cmplt. ¶ 105)

[14]   (Cmplt. ¶ 111)

involving "no risk at all."[15]  Hill also told Floyd that the transaction was a "quick flip" and that

he and his partners had a buyer lined up to purchase Hackensack Property.[16]  Hill promised Floyd

that he would get his money back in six months and would make a substantial additional profit.

Hill reiterated these assurances to Floyd at June and October 2007 meetings and in

subsequent phone calls.

On November 15, 2007, Floyd executed a Subscription Agreement to purchase

$1,250,000 of Class B Non-Voting Limited Liability Company Units.

C.   Omissions

Plaintiffs allege that Defendants made several omissions in enticing them to invest in the

Offering.

Plaintiffs claim that they were never given a copy of the appraisal done of the Hackensack

Property,[17] nor shown photographs of the Property or drawings of potential development on the

Property.  Plaintiffs further allege that Defendants should have indicated that the Hackensack

Property was troubled from the outset insofar as it was close to a jail and a homeless shelter, had

a history of pollution problems and had remained undeveloped for more than twenty years.

---

[15]  (Cmplt. ¶ 190)

[16]  (Cmplt. ¶¶ 191-92)

[17]  In Plaintiffs' January 14, 2011 submission, they propose to add an allegation to the
Amended Complaint that Defendants failed to disclose at any point that the $18 million appraisal
of the Hackensack Property was expressly conditioned on Defendants' "Project Build-Out
Representations," which provided that no additional government approval was necessary to
complete the proposed build-out.

Plaintiffs also cite a series of omissions with regard to the health of Defendants'

investment in the Hackensack Property.  They claim they should have been told that at the time

they invested, all potential purchasers of the Property had withdrawn from discussions, and

Defendants did not have sufficient capital to develop the Property themselves, nor had they

received Planning Board approval to do so.  Plaintiffs allege that they were never told any of the

details of the agreement to purchase the Hackensack Property, including that PIP had only made

an initial deposit, so additional payments were required to effect the purchase.  The Complaint

also alleges that at the time of Plaintiffs' investment, the Hackensack Property had materially

depreciated in value, creating a substantial risk of foreclosure or forced sale, and the Defendants

were suffering financially, requiring Edward Koenig to take out a personal loan and a second

mortgage on the Hackensack Property to facilitate cash flow.[18]

D.      Post-Investment Communications

The Whites claim that even after they invested in the Offering, they did not receive any

documentation memorializing their investment.  When they inquired about this with Hill in early

2008, he assured them "that everything was 'fine.'"[19] He also told them that he and his partners

were waiting for a buyer for the Hackensack Property and claimed that if a buyer could not be

found, they would build housing on the Hackensack Property, producing a comparable return on

the Whites' investment to what he had promised.

_____

[18]  Plaintiffs' January 14, 2011 submission indicates they in an Amended Complaint, they would further allege that Defendants failed to disclose at any point that the mortgage on the Hackensack Property was expressly conditioned on obtaining an appraisal valuing the property at $18 million or more.

[19]  (Cmplt. ¶ 140)

Floyd also claims that he was not provided with any documentation regarding his investment in the Offering until more than two years after he executed the Subscription Agreement.

In early 2009, Hill met with the Whites and Floyd. He continued to maintain that the deal was "fine" and would produce profits.[20] Hill also told Plaintiffs that he and his partners had received offers to purchase the Hackensack Property.

In February 2010, the Whites and Floyd conferred and discovered that they had not received any documentation regarding their investment in the Offering. In response to their inquiries, Hill renewed his assurances that the investment would work out well for them.

In March 2010, the Whites' accountant began making inquiries with Hill. Shortly thereafter, the Whites told Hill they wanted to withdraw from the Offering and demanded documentation of their investment. Hill promised that the Whites' money would be returned but weeks passed without any communication from him.

On April 5, 2010, Kolinsky and Hill wrote to Plaintiffs and the other Class B Unit holders informing them that the sale of the Hackensack Property was imminent and that all sale proceeds would be used to pay debt obligations. As a result, Plaintiffs would lose their entire investment.

Despite this representation in the April 5, 2010 letter, the Complaint pleads that at the time this case was filed in early May 2010, the Hackensack Property had not yet been sold.[21]

III.  PROCEDURAL HISTORY

---

[20]  (Cmplt. ¶ 151)

[21]  Indeed, the parties submissions on these motions, including Plaintiffs' allegations to be included in the proposed Amended Complaint, indicate that the Hackensack Property has not yet been sold more than a year later.

8

Plaintiffs filed the instant action on May 14, 2010.  They assert the following federal

claims against all Defendants: (1) Securities Fraud in Violation of Section 10(b) of the Exchange

Act and (2) Control Person Liability Under Section 20(a) of the Exchange Act.

Plaintiffs also bring the following state claims against all Defendants: (1) Negligent

Misrepresentation; (2) Fraud; (3) Civil Conspiracy to Commit Fraud; (4) Aiding and Abetting a

Breach of Fiduciary Duty; and (5) Civil Conspiracy to Breach Fiduciary Duties.

In addition, Plaintiffs bring a claim for Breach of Fiduciary Duty against Kolinsky-Hill

and Kolinsky and Hill individually.

On December 16, 2010, this Court issued an order directing Plaintiffs to make a

submission including, <u>inter alia</u>, a chart setting forth the allegations Plaintiffs would add to an

Amended Complaint in support of their securities fraud claims, if leave to amend were granted.[22]

On January 14, 2011, Plaintiffs submitted the chart as directed.

## <u>DISCUSSION</u>

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

---

[22]   The order specifically required that the chart set forth: the statement or omission that formed the basis of Plaintiffs' claim; the speaker or party responsible for the omission; the date the statement or omission was made; where the statement or omission was made; whether it was made orally or in writing; the basis for alleging that the statement or omission is mistaken or misleading; and any allegations relevant to the speaker's (or that of the party responsible for the omission) scienter.

misconduct alleged."[23]  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

While courts must generally accept Plaintiff's factual allegations as true, they are also entitled to consider documents "integral to" the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Additionally, courts may review documents explicitly relied on or incorporated by reference in the pleading.  Id.

I.    INSUFFICIENT PLEADING OF THE FEDERAL SECURITIES
      LAW AND STATE LAW FRAUD CLAIMS AS AGAINST SOME DEFENDANTS

"In order to state a claim pursuant to Rule 10b-5, plaintiffs must allege that defendants (1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which plaintiffs reasonably relied and (5) that plaintiffs' reliance was the proximate cause of their injury."  In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004) (internal quotations omitted).

---

[23]  Defendants argue that this Court should not reach the merits of the Motions to Dismiss because it lacks jurisdiction, as Plaintiffs' claims are not ripe.  Essentially, Defendants argue that because the Hackensack Property has not yet been sold and no sale is planned, Plaintiffs have not yet suffered a loss.  This argument is belied by the case law and cannot provide a basis upon which to dismiss this action.  See e.g., Csi Inv. Partners II, L.P. v. Cendant Corp., 180 F. Supp. 2d 444, 458 (S.D.N.Y. 2000) ("'In a securities fraud action, such a cognizable injury occurs at the time an investor enters . . . a transaction as a result of material misrepresentations.'") (quoting Zola v. Gordon, 685 F. Supp. 354, 363 n. 10 (S.D.N.Y. 1988));  Continental Life Ins. Co. v. Shearson Lehman Hutton, Inc., No. 88-9279 (HJH), 1992 U.S. Dist. LEXIS 356, at *4 (E.D. Pa. Jan. 10, 1992) ("'In a securit[ies] fraud case, the cognizable injury occurs at the time an investor enters, or if he is currently owns stock, decides to forego entering a transaction an as a result of material misrepresentations.'") (quoting Volk v. D.A. Davidson & Co., 816 F.2d 1406. 1412 (9th Cir. 1987)).  This argument is really just a repackaging of Defendants' "loss causation" argument, discussed below.

In order to state a claim pursuant to Section 20(a) of the Exchange Act, "plaintiffs must 'prove not only that one person controlled another person, but also that the 'controlled person' is liable under the Act. If no controlled person is liable, there can be no controlling person liability.'" Id. at 153 (quoting Shapiro v. UJB Financial Corp., 964 F.2d 272, 279 (3d Cir. 1992)).

Plaintiffs also assert several state law claims that sound in fraud. These are the claims for negligent misrepresentation, common law fraud and civil conspiracy to commit fraud. See e.g., Mason v. Costco Wholesale Corp., No. 09-361 (JLL), 2009 WL 2634871, at *7 (D.N.J. Aug. 29, 2009) (finding that a negligent misrepresentation claim sounded in fraud where it was based on defendant's false representation and deceit).

"'Negligent misrepresentation is...[a]n incorrect statement, negligently made and justifiably relied upon, [and] may be the basis for recovery of damages for economic loss...sustained as a consequence of that reliance.'" Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc., 617 F.3d 207, 218 (3d Cir. 2010) (quoting H. Rosenblum, Inc. v. Adler, 461 A.2d 138, 142-43 (N.J. 1983)).

"In New Jersey, a successful claim of fraud requires proof of five elements: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Indian Brand Farms, 617 F.3d at 218 (quoting Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997)).

"Under New Jersey law, a civil conspiracy is a 'combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a

principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage.'" Tammera v. Grossman, No. 10 Civ. 569 (DRD), 2010 U.S. Dist. LEXIS 32641, at *15 (D.N.J. Mar. 29, 2010) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005)).

    A.    <u>Pleading Standards</u>

In order to survive the motions to dismiss, Plaintiffs' allegations in support of their federal securities law claims must satisfy the heightened pleading standards of Rule of Civil Procedure 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

This rule "requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue."  <u>In re Alpharma Inc. Sec. Litig.</u>, 372 F.3d at 148 (quoting <u>In re Rockefeller Center Properties, Inc. Sec. Litig.</u>, 311 F.3d 198, 217 (3d Cir. 2002)).

Plaintiffs' federal claims must all satisfy the requirements imposed by the Private Securities Litigation Reform Act (the "PSLRA").  The PSLRA "imposes another layer of factual particularity to allegations of securities fraud."  <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 311 F.3d at 217.  The PSLRA requires a plaintiff leading a securities fraud claim to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and

belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The PSLRA also requires that where a plaintiff is required to prove the state of mind of a defendant, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1).

B.      Group Pleading of the Federal Securities Law Claims

The allegations in the Complaint attribute misstatements or omissions of material facts to Hill specifically or to all Defendants generally. The Complaint does not attribute a single misstatement or omission to any of the Hackensack or Koenig Defendants by name, nor does it provide any facts in support of the conclusion that any one of the Defendants, other than Hill, had the requisite scienter. Even when Plaintiffs were given the opportunity to present additional allegations that would be included in the proposed Amended Complaint, they failed to identify any misstatement or omission attributable to any specific Defendant, other than Hill.[24] General allegations that all 11 remaining Defendants are responsible for acts creating liability under the federal securities law are wholly insufficient to satisfy the standards of particularity required by Fed. R. Civ. P. 9(b) and the PSLRA.

In opposing the Hackensack and Koenig Defendants' motions to dismiss, Plaintiffs argue that the statements and omissions contained in the POM are attributable to all Defendants and

---

[24] Notably, the chart Plaintiffs submitted in response to this Court's December 16, 2010 order is 54 pages long. Despite this Court's direction that the chart specify the speaker or party responsible for the omission and any allegations relevant to the speaker's (or that of the party responsible for the omission) scienter, the lengthy submission does not implicate a single specific Defendant other than Hill.

can form the basis for liability under the federal securities laws.  "Group pleading" of this kind is not permitted under the PSLRA.[25]

In Winer Family Trust v. Queen, 503 F.3d 319, 337 (3d Cir. 2007), the Third Circuit defined the group pleading doctrine as "a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations."  Id. at 335.  The Court went on to hold that the group pleading doctrine is not consistent with the purposes of the PSLRA and, thus, "the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA."  Id. at 337.

Because Plaintiffs' claim of securities fraud liability for all of the Hackensack and Koenig Defendants rest on allegations in the form of "group pleading," these claims must be dismissed. The only exception are Plaintiffs' claims against Defendant Hackensack Park Plaza LLC. Hackensack Park Plaza is the entity behind the POM and it is listed as distributing the POM in furtherance of the Offering.[26]  Accordingly, Plaintiffs federal securities fraud claims against

---

[25]  This Court has previously admonished Plaintiffs to consult an attorney familiar with securities law.  See White v. Kolinsky, No. 10-2252 (FSH), Order at *3 n. 6 (D.N.J. Dec. 16, 2010) (Dkt. No. 71) ("In preparing this submission and future submissions to this Court, Plaintiffs may, at their option, wish to consult with an attorney who has expertise in the area of securities litigation.").

[26]  The POM is Exhibit C to the Declaration of Stephen I. Kolinsky.  Because the POM is both integral to the Complaint and is incorporated by reference in the Complaint, this Court may rely upon it in deciding these motions.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that while courts must generally accept Plaintiff's factual allegations as true, they are also entitled to consider documents "integral to" the complaint and those explicitly relied on or incorporated by reference in the pleading).

14

Hackensack Park Plaza may proceed only to the extent they are predicated upon misstatements or omissions in the POM.

        C.      <u>Pleading of the State Law Claims Sounding in Fraud</u>

Rule 9(b) requires that even as to state law claims sounding in fraud, a plaintiff support his allegations with basic factual information.  However, the Complaint does not recite a single false statement or omission attributable to a specific Defendant other than Hill.  The bar on group pleading in the PSLRA does not extend, however, to Plaintiffs' state law fraud claims.  Thus, Plaintiffs' state law fraud claims may proceed only to the extent they plead liability against the moving Defendants based on the representations or omissions in the POM.

## II.     OTHER CHALLENGES TO THE FEDERAL SECURITIES <br> <u>FRAUD CLAIMS AND THE STATE LAW FRAUD CLAIMS</u>

Defendants seek to dismiss the federal securities fraud and state law fraud claims on a variety of grounds.

        A.     <u>Falsity</u>

In order to satisfy the requirements both a claim under Section 10(b) and of fraud claims asserted under New Jersey common law, Plaintiffs must plead that the representations or omissions at issue were false or misleading.  <u>See</u> <u>In re Alpharma Inc. Sec. Litig.</u>, 372 F.3d at 147; <u>Indian Brand Farms</u>, 617 F.3d at 218.

Defendants argue that Plaintiffs have failed to satisfy this element of their claims.  To give just one example, Defendants seek to dismiss Plaintiffs claims relating to the underfinancing of the Hackensack Project.  Defendants contend that they raised $17 million, as represented in the POM.  This kind of disputed factual issue cannot be resolved on a motion to dismiss.  While

Defendants may renew their challenges on these grounds after discovery, at the motion to dismiss stage, this Court must take the claims pleaded in the Complaint as true.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.

       B.     Loss Causation

In order to satisfy the requirements both a claim under Section 10(b) and of fraud claims asserted under New Jersey common law, Plaintiffs must plead injury or loss that is tied to the actions of Defendants.  See In re Alpharma Inc. Sec. Litig., 372 F.3d at 147;  Indian Brand Farms, 617 F.3d at 218.

"The causation issue becomes most critical at the proof stage. Whether the plaintiff has proven causation is usually reserved for the trier of fact."  EP Medsystems, Inc. v. Echocath, Inc., 235 F.3d 865, 884 (3d Cir. 2000).

Defendants argue first that Plaintiffs' claims should be dismissed because they have failed to demonstrate that they have incurred an injury.  The Hackensack Property has not yet been sold and is, according to Defendants, not likely to be sold at any point in the near future.  Without knowing what amount of money the Hackensack Property can be sold for, it is not clear what Plaintiffs' investment is really worth.

Though the Hackensack Property has not yet been sold, it is by all accounts worth very little.  Indeed, Plaintiffs incorporate in the Complaint an April 5, 2010 letter from Kolinsky and Hill to Plaintiffs, in which the advisers explain that they "agree that it does not make sense to continue to hold the land" and "[e]ven if we carried the land for 2 or 3 years we do not see the land appreciating enough to cover the additional carrying costs."[27]  The letter also notes that a

---

[27]  (Cmplt., Ex. A)

sale of the property is in the works and that the result of a sale of the property will be that "all partners, managers and investors will lose their original investment and the partners and managers will still be personally responsible for the balance of the mortgage debt."[28]  The question of the magnitude of Plaintiffs' loss is an issue of fact.

Defendants also argue that because of the intervening real estate crisis, Plaintiffs cannot demonstrate that it was Defendants' misstatements that were the proximate cause of any loss they suffered.  This is precisely the sort of question of fact the Third Circuit has noted is usually reserved for the trier of fact.  See EP Medsystems, 235 F.3d at 884.  While the real estate crisis and broader economic climate may be relevant to ultimate causation inquiry, Defendants have not met their burden on this motion of demonstrating that it was the sole, or even primary, factor in causing Plaintiffs' losses.  See King County v. IKB Deutsche Industriebank AG, 708 F. Supp. 2d 334, 343 (S.D.N.Y. 2010) ("To hold that plaintiffs failed to plead loss causation solely because the credit crisis occurred contemporaneously with Rhinebridge's collapse would place too much weight on one single factor and would permit S&P and Moody's to blame the asset-backed securities industry when their alleged conduct plausibly caused at least some proportion of plaintiffs' losses.").

C.    The Provisions in the Subscription Agreement and the POM

Defendants seek to dismiss Plaintiffs' claims in light of the fact that Plaintiffs signed the Subscription Agreement and were aware of the POM, both of which disclaim reliance on statements outside the POM, including prior oral statements.  The documents also set forth that

---

[28]  (Id.)

the Plaintiffs were entering into a high risk deal and outline that the development of the land involves uncertainties and will be dependent on local and national economic conditions.

The Third Circuit has found that courts should "treat the existence of the non-reliance clause as one of the circumstances to be taken into account in determining whether the plaintiff's reliance was reasonable." AES Corp. v. Dow Chem. Co., 325 F.3d 174, 183 (3d Cir. Del. 2003) (citing Rissman v. Rissman, 213 F.3d 381, 397-89 (7th Cir. 2000)). To do otherwise "'would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate.'" AES Corp., 325 F.3d at 183-84 (quoting One-O-One Enters., Inc. v. Caruso, 270 U.S. App. D.C. 251, 388 (D.C. Cir. 1988)).

Thus, while Plaintiffs' signatures on the Subscription Agreements should be taken into consideration in determining whether their reliance on the alleged misrepresentations and omissions was reasonable, it is not dispositive and does not require dismissal of their claims at this stage.[29]

## II.   FIDUCIARY DUTY CLAIMS

Plaintiffs assert a claim for Breach of Fiduciary Duty against Kolinsky-Hill and Kolinsky individually, as well as claims for Aiding and Abetting a Breach of Fiduciary Duty against all Defendants.

### A.   Breach of Fiduciary Duty Claim Against Kolinsky and Kolinsky-Hill

---

[29] Defendants also argue that Plaintiffs' cannot base their claims on alleged misrepresentations or omissions made after their purchases of securities in the Offering. This Court need not reach this issue, as Plaintiffs have represented that the allegations in the Complaint regarding post-purchase misrepresentations or omissions are merely present "as a means to bolster and attribute scienter to Defendants" and are not the basis for any of Plaintiffs' claims. See January 14, 2011 Submission at 1-2 (Dkt. No. 74).

"Breach of a fiduciary obligation is a tort claim, and thus requires the showing of a duty, a breach, an injury, and causation."  In re ORFA Sec. Litig., 654 F. Supp. 1449, 1457 (D.N.J. 1987)

Plaintiffs allege that they were clients and recipients of the investment advice of Kolinsky-Hill and of Kolinsky and Hill individually, and thus Kolinsky-Hill and Kolinsky owed them a fiduciary duty.  The allegations in the Complaint make out a claim that the duty was breached when Hill, acting under the auspices of Kolinsky-Hill, convinced Plaintiffs to invest in the Offering, a deal in which Kolinsky and Hill were involved and which ultimately appears to have caused Plaintiffs economic injury.

The only argument proffered by Kolinsky and Kolinsky-Hill in seeking to dismiss this claim is that a breach of fiduciary duty claim cannot be sustained where the plaintiffs consented to the conflict of interest at issue.  Based on the allegations in the Complaint, however, this Court cannot conclude that Plaintiffs consented to the conflict based upon complete knowledge, nor that their signatures on the POMs is the end of the issue.  The disclosure in the POM is relatively limited, indicating only that Kolinsky will serve as an officer of River Street Project LLC, that he will be entitled to reimbursement of his costs and expenses and that he is a registered securities broker.  Moreover, the cases Defendants cite in support of dismissal are not on point.[30]

_____

[30]  At the outset, none of the cases cited by Defendants are binding on this Court, nor were they decided in this jurisdiction.  In Lawton v. Nyman, 327 F.3d 30 (1st Cir. 2003), the First Circuit analyzed duties owed by corporate directors under Rhode Island law, which is clearly not applicable here.  In Sealink, Inc. v. Frenkel & Co., 441 F. Supp. 2d 374 (D.P.R. 2006), the court weighed the fiduciary duties specific to insurance brokers.  Finally, Flaum v. Birnbaum, 120 A.D.2d 183, (N.Y. App. Div. 4th Dep't 1986), deals with a dispute over an estate arising under New York law.  Though the court concluded that a transaction in which a fiduciary engaged in self-dealing "is voidable by the beneficiaries unless they have consented," it went on to note that [e]ven then, it is voidable if the fiduciary fails to disclose material facts which he knew or should

B.    Aiding and Abetting Fiduciary Duty Claim Against All Defendants

"To be found liable for aiding and abetting a breach of fiduciary duty, a defendant must (1) know that the other's conduct constituted such a breach, and (2) substantially assist or encourage the other in committing that breach." Capitol First Corp. v. Todd, No. 04-6439 (MLC), 2006 U.S. Dist. LEXIS 93359, at *41-42 (D.N.J. Dec. 27, 2006).

In their lengthy Complaint, Plaintiffs do not assert a single allegation indicating that any of the Defendants other than Kolinsky, Hill and Kolinsky-Hill Financial were even aware of Plaintiffs' investment, let along knew or substantially assisted in a breach of fiduciary duty. Because Plaintiffs have not alleged either element of an aiding and abetting fiduciary duty claim against any of the Koenig Defendants, nor against any of the Hackensack Defendants save Kolinsky and Kolinsky-Hill, the claim must be dismissed as against those Defendants. However, the Complaint does make out a claim for breach of fiduciary duty against Kolinsky and Kolinsky-Hill. The same allegations support a theory that either Defendant may have aided each other's, or Hill's, breach. Accordingly, the claim for aiding and abetting will proceed as against Kolinsky and Kolinsky-Hill.

III.    LEAVE TO AMEND

"[A] court freely should grant leave to amend a complaint when justice so requires." Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, 604 F.3d 788, 803 (3d Cir. 2010) (citing Fed. R. Civ. P. 15(a)(2)). However, a district court may deny leave to amend where amendment

---

have known, if he used the influence of his position to induce the consent or if the transaction was not in all respects fair and reasonable." Id. at 194. Certainly, a number of these scenarios are implicated based on the facts alleged in the Complaint.

would be inequitable or futile.  <u>Toll Bros., Inc. v. Twp. of Readington</u>, 555 F.3d 131, 144 (3d Cir. 2009).  Plaintiffs seek leave to amend their Complaint to add additional allegations in support of the dismissed claims.

Plaintiffs will not be permitted to amend their Complaint to re-plead their dismissed federal securities fraud claims.  In its December 16, 2010 Order, this Court directed Plaintiffs to make a submission including, <u>inter alia</u>, a chart setting forth the allegations Plaintiffs would add to an Amended Complaint in support of their securities fraud claims, if leave to amend were granted.  Despite the fact that Plaintiffs had been directed to specifically identify the speaker or party responsible for each new misstatement or omission they planned to add in an Amended Complaint, the chart submitted in response to the Order did make a claim against any individual or corporate Defendant other than Hill.  Nor did the chart provide any basis for scienter against against any individual or corporate Defendant other than Hill.  Thus, the allegations Plaintiffs propose to add to an Amended Complaint in support of their federal securities law claims suffer from the same fatal flaw as those allegations in the Complaint: the impermissible use of group pleading.  To permit Plaintiffs to amend as to these claims, then, would be futile.

To the extent Plaintiffs seek leave to amend as to the other claims dismissed in this Opinion & Order, they may do so by filing an appropriate motion directed to Magistrate Judge Shipp.

## <u>CONCLUSION</u>

For the reasons set forth above,

**IT IS** on this 18th day of May, 2011,

**ORDERED** that the Hackensack Defendants and the Koenig Defendants' motions to dismiss the Complaint are **GRANTED** in part and **DENIED** in part as follows:

- The motions to dismiss Plaintiffs' federal securities fraud claims as against K&K 320 River Street Project, LLC; Steven I. Kolinsky; Kolinsky Hill Financial Group, Inc.; River Street Project, LLC; David Koenig; Edward Koenig; and Jeffrey Koenig are **GRANTED**.

- The motions to dismiss Plaintiffs' federal securities law claims against Defendant Hackensack Park Plaza, LLC are **GRANTED** in part and **DENIED** in part such that the claims may proceed only to the extent they are predicated upon misstatements or omissions in the POM.

- The motions to dismiss Plaintiffs' state law claims sounding in fraud are **GRANTED** in part and **DENIED** in part such that the claims may proceed only to the extent they plead liability against the moving Defendants based on the representations or omissions in the POM.

- The motions to dismiss Plaintiffs' claims for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty as against Steven I. Kolinsky and Kolinsky Hill Financial Group are **DENIED**.

- The motions to dismiss Plaintiffs' claims for aiding and abetting a breach of fiduciary duty as against Hackensack Park Plaza; K&K 320 River Street Project, LLC; River Street Project, LLC; David Koenig; Edward Koenig; and Jeffrey Koenig are **GRANTED**.

The Clerk of the Court is directed to terminate the motions: Docket Nos. 18 and 47.

/s/ Faith S. Hochberg
**HON. FAITH S. HOCHBERG, U.S.D.J.**

22